UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00693-DJH-RSE

**DANIEL H.**                                                                                              **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*                                         **DEFENDANT**

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Daniel H.'s ("Plaintiff's") application for supplemental security income benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Plaintiff (DN 17) and the Commissioner (DN 22) have filed a Fact and Law Summary. The District Judge has referred this case to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 14).

I. Findings of Fact

Plaintiff is 39 years old, attended one year of college, and was incarcerated at the time of his administrative hearing. (Tr. 325, 362, 41). Plaintiff is presently unemployed but has past relevant work experience as a customer service representative at U-Haul from September 2016 to February 2017 and a stocker/driver at a warehouse in 2014. (Tr. 362). On March 10, 2017, Plaintiff protectively filed an application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, alleging disability beginning on January 15, 2017. (Tr. 325). He later

amended his onset date to May 15, 2016 (Tr. 334), then amended it again to February 27, 2017 (Tr. 342). Plaintiff claimed he could not perform work at substantial gainful levels due to ulcerative colitis; blood clots; paranoia; depression; anxiety; mood issues; dizziness; drowsiness; anemia; and a pulmonary embolism. (Tr. 361). His application was denied initially on May 5, 2017 (Tr. 160) and upon reconsideration on June 30, 2017 (Tr. 165).

On Plaintiff's request, a hearing was conducted in St. Louis, Missouri before Administrative Law Judge Brian Steger ("ALJ Steger") on October 24, 2018. (Tr. 64–99). Plaintiff appeared with his attorney, Charles Burchett. (Tr. 66). ALJ Steger issued an unfavorable decision on January 9, 2019. (Tr. 132–48). Plaintiff sought review of ALJ Steger's decision (Tr. 267–68), and the Appeals Council remanded the case. (Tr. 155–58). The Appeals Council found that ALJ Steger failed to adequately consider the effects of Plaintiff's ulcerative pancolitis and the limiting effects of his impairments generally. (*Id.*). A second hearing was held on August 24, 2020 in Louisville, Kentucky before Administrative Law Judge Susan Brock ("ALJ Brock"). (Tr. 33–62). The hearing was conducted by phone, and Plaintiff and his attorney again participated. (Tr. 36). ALJ Brock issued an unfavorable decision on September 29, 2020. (Tr. 12–25).

ALJ Brock applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Plaintiff has not engaged in substantial gainful activity since March 6, 2017. (Tr. 17). Second, Plaintiff has the severe impairments of ulcerative pancolitis, history of blood clots, obesity, and depressive disorder. (*Id.*). Third, none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 18). ALJ Brock then determined Plaintiff has the residual functional capacity ("RFC") to perform "light work," as

defined in 20 CFR 416.967(b), with the following limitations:

> He may occasionally stoop, kneel, crouch, crawl and climb ramps or stairs, but he may never climb ladders, ropes, or scaffolds; he can tolerate occasional exposure to vibrations and temperature extremes but no exposure to unprotected heights; he can understand, remember, and carry out simple instructions and tasks, and sustain attention, concentration, persistence, and pace in 2-hour segments; he can interact occasionally with coworkers and supervisors but he should never interact with the general public; he can tolerate only occasional workplace changes that are gradually introduced; and he would miss at least one day of work every six weeks.

(Tr. 19).

Fourth, ALJ Brock found Plaintiff unable to perform any of his past relevant work as actually or generally performed. (Tr. 23). Fifth and finally, considering Plaintiff's age, education, work experience, and RFC, ALJ Brock determined there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 24). ALJ Brock concluded that Plaintiff was not disabled, as defined in the Social Security Act, from March 6, 2017 through the date of her decision. (Tr. 33). Plaintiff sought review of ALJ Brock's decision. (Tr. 314–15). This time, the Appeals Council declined review on September 13, 2021. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in

defined in 20 CFR 416.967(b), with the following limitations:

> He may occasionally stoop, kneel, crouch, crawl and climb ramps or stairs, but he may never climb ladders, ropes, or scaffolds; he can tolerate occasional exposure to vibrations and temperature extremes but no exposure to unprotected heights; he can understand, remember, and carry out simple instructions and tasks, and sustain attention, concentration, persistence, and pace in 2-hour segments; he can interact occasionally with coworkers and supervisors but he should never interact with the general public; he can tolerate only occasional workplace changes that are gradually introduced; and he would miss at least one day of work every six weeks.

(Tr. 19).

Fourth, ALJ Brock found Plaintiff unable to perform any of his past relevant work as actually or generally performed. (Tr. 23). Fifth and finally, considering Plaintiff's age, education, work experience, and RFC, ALJ Brock determined there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 24). ALJ Brock concluded that Plaintiff was not disabled, as defined in the Social Security Act, from March 6, 2017 through the date of her decision. (Tr. 33). Plaintiff sought review of ALJ Brock's decision. (Tr. 314–15). This time, the Appeals Council declined review on September 13, 2021. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in

reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III. Conclusions of Law

Plaintiff raises several claims of error that can be generally categorized in two ways: attacks aimed at the absenteeism rate listed in ALJ Brock's RFC finding and general criticism of her credibility assessment. For the former category, Plaintiff claims ALJ Brock's RFC determination is "factually vague" as it relates to the frequency Plaintiff would need to miss work. (DN 17, at PageID # 1681). Similarly, Plaintiff challenges ALJ Brock's finding at step five for failure to "resolve conflicting vocational expert testimony regarding the maximum employer tolerance for absenteeism." (*Id.* at PageID # 1685). Plaintiff also suggests ALJ Brock failed to properly evaluate a medical statement from his treating gastroenterologist Dr. Abrar Arshad, which Plaintiff believes demonstrates a need to miss work more than once every six weeks. (*Id.* at PageID # 1680). As for the latter category, Plaintiff broadly argues ALJ Brock erred in her assessment of his subjective complaints. (*Id.* at PageID # 1682).

#### A. Absenteeism Rate

Three of Plaintiff's arguments center on ALJ Brock's RFC determination and, more specifically, her finding that he "would miss at least one day of work every six weeks." (Tr. 19). A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity

for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases her RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

Plaintiff suggests ALJ Brock erred in finding he would need to miss "at least one day" of work every six weeks. (DN 17, at PageID # 1680). He criticizes its vagueness and claims ALJ Brock "made no attempt to reconcile" the finding with Dr. Arshad's treating statement documenting the need for "well over 12 absences" each year. (*Id.* at PageID # 1681, 1680).

In response, the Commissioner offers that ALJ Brock's assessment that Plaintiff would miss work "at least" once every six weeks was consistent with vocational expert testimony and supported by the record evidence. (DN 22, at PageID # 1706). The Commissioner notes that Plaintiff did not submit evidence to support his presumption that all his treatments would take place during work hours and require an entire day off. (*Id.* at PageID # 1705). In addition, the Commissioner suggests Plaintiff mischaracterizes Dr. Arshad's statement, positioning that it is not an "opinion" for ALJ Brock to evaluate under the regulations. (*Id.* at PageID # 1709).

The regulations applicable to claims for disability benefits filed on or after March 27, 2017, i.e., the new regulations, changed the way the Commissioner considers medical opinion evidence. Because Plaintiff's application was protectively filed before March 27, 2017, the "old regulations" apply. The old regulations established a hierarchy of acceptable medical source opinions, which treating physicians top. *Hollon v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 577, 582 (S.D. Ohio 2015). The so-called "treating physician rule" requires a treating physician's opinion be given controlling

weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). An ALJ is required to give "good reasons" for the weight assigned to a treating source's medical opinion. *Id.*

While the Court cannot agree with the Commissioner that ALJ Brock should not have considered the letter a medical opinion, ALJ Brock's evaluation of the statement under the regulations is not really at issue here. Plaintiff even concedes that ALJ Brock clearly considered the statement. (*See* DN 17, at PageID # 1680 ("Dr. Arshad's May 9, 2019 statement noted that the Plaintiff is to receive Remicade infusions every six weeks to maintain remission of his condition. The ALJ apparently took this part of the statement into account when formulating the RFC.")). The issue, rather, is with ALJ Brock's interpretation of the directives in Dr. Arshad's statement, since the statement does not explicitly provide that Plaintiff must miss work more than once every six weeks. Put another way, ALJ Brock's absenteeism rate finding is not contrary to Dr. Arshad's statement on its face.

> On May 9, 2019, Dr. Arshad signed a letter stating the following:
>
> I am writing in regard[] to patient Daniel H[] and the medical necessity of his Remicade treatment. Mr. Harris was diagnosed with ulcerative pancolitis in February of 2017. With this diagnosis it is very important that he does not miss a Remicade infusion. He is to be given this once every 6 weeks[.] . . . He also has to have blood work once every 6 weeks[.] . . . This is all very crucial to his health, missing and [sic] injection or missing labs could cause him to go into a flare up at this time his condition is in remission. He is required to see us at least once every three months in office and see his hematologist as well.

(Tr. 1402). According to Plaintiff, this statement "is more restrictive in frequency of required treatment than the [] RFC's absenteeism rate of one day per six weeks." (DN 17, at PageID # 1681). In addition to the statement itself, Plaintiff cites to his hearing testimony that "blood is not always drawn on the same day as infusions" and submits that his treatment regimen would require

6

more than one day off every six weeks. (*Id.* at PageID # 1680).

Dr. Arshad's letter plainly indicates a need for Plaintiff to receive infusions and have bloodwork done once every six weeks, and to visit his gastroenterologist and hematologist once every three months. But this does not necessarily indicate a need to miss work for each of these visits. As the Commissioner points out, Dr. Arshad's letter was not intended for an employer so that his absences may be approved or excused. Rather, it was submitted to the correctional complex where Plaintiff was then housed to ensure he received the proper treatments while incarcerated. (*See* Tr. 1577–78). Moreover, although Plaintiff testified that blood draws do not always occur on the same day as infusions, there is no evidence to suggest they cannot be scheduled for the same day. And as ALJ Brock noted, Plaintiff also testified that he generally sees his physician on the same date as his infusion. (Tr. 21). If Plaintiff's infusion, blood draw, and gastroenterological or hematological visit occurred on the same day, and assuming they must occur on a workday, this would amount to two days off every three months (once for an infusion, draw, and gastroenterologist appointment, and once for an infusion, draw, and hematologist appointment), or one day off every six weeks. There is a clear and logical bridge between the record evidence, including Dr. Arshad's letter, and ALJ Brock's conclusion that he would need to miss work approximately (or "at least") once every six weeks. Beyond this, as previously stated, the Court will not resolve conflicts in the evidence or decide questions of credibility, two jobs reserved for the administrative law judge. *See Cutlip*, 25 F.3d at 286.

Plaintiff also argues that ALJ Brock's failure to properly evaluate vocational expert testimony plagued her RFC finding related to Plaintiff's absenteeism rate and her finding that a significant number of jobs existed that Plaintiff could perform. (*Id.* at PageID # 1685). He points out that at his first administrative hearing, impartial vocational expert Kathleen Doehla ("VE

7

Doehla") testified that seven unexcused absences within a twelve-month period would be considered the limits of customary employer tolerance, but at his second hearing, impartial vocational expert Shannon Hollander ("VE Hollander") testified that one day per month would generally be tolerated. (DN 17, at PageID # 1685). Plaintiff suggests ALJ Brock's failure to resolve the conflict between the experts' testimony was error. (*Id.*).

First, as the Commissioner notes, there is no inherent conflict between VE Doehla's and VE Hollander's testimony. VE Doehla addressed "unexcused" absences[1] and VE Hollander addressed absences generally,[2] excused or unexcused. Second, ALJ Brock was not required to resolve any alleged conflict between the two vocational experts' testimony since Plaintiff failed to raise the issue during the hearing. The Sixth Circuit has held that where a conflict in a vocational expert's testimony is not "apparent" and a claimant fails to bring the conflict to the ALJ's attention, the ALJ is not required to "conduct an independent investigation into the testimony of witnesses to determine if they are correct" nor "explain how the conflict was resolved." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006).

During the hearing, ALJ Brock elicited testimony from VE Hollander on several hypotheticals. Afterward, pursuant to Social Security Ruling 00-4P,[3] ALJ Brock asked VE Hollander if her testimony was consistent with the DOT. (Tr. 60). VE Hollander responded in the affirmative but indicated because the DOT does not address absences or unscheduled breaks, her testimony was based on her training, education, and experience. (*Id.* at PageID # 60–61). Plaintiff's

---

[1] At the first administrative hearing, when ALJ Steger asked VE Doehla to describe general "employer tolerances with respect to off-task time and absenteeism," she testified, "Off task [] 15 percent or more would be work-preclusive. And absences, no more than seven unexcused a year, and occur no more than one time each month." (Tr. 95–95).
[2] At the second hearing, when ALJ Brock asked VE Hollander what the employer tolerance for absenteeism in the specific, unskilled jobs she found a hypothetical individual with Plaintiff's vocational profile could perform (small parts assembler, electronics worker, and inspector/hand packager), she testified that "[o]ne day per month would be acceptable. But missing anything more than one day per month would eliminate competitive employment." (Tr. 60).
[3] Social Security Ruling 00-4P provides for how conflicts in a vocational expert's testimony should be resolved.

8

attorney then had the opportunity to cross-examine VE Hollander, and he focused his questioning on her testimony regarding absenteeism. (*Id.* at PageID # 61). Plaintiff's attorney did not, however, raise the issue of VE Doehla's prior, apparently inconsistent testimony. Under these circumstances, a conflict between the two experts' testimony would not be apparent. *See Martin*, 170 F. App'x at 374. Because Plaintiff "was afforded a full opportunity to cross-examine the expert regarding said conflict" and did not bring the conflict to ALJ Brock's attention, she had "no further duty to interrogate" VE Hollander or to resolve the non-apparent conflict. *Harris v. Comm'r of Soc. Sec.*, 598 F. App'x 355, 361 (6th Cir. 2015) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)). The Court finds no error in ALJ Brock's assessment of VE Hollander's testimony or her incorporation of the testimony into the RFC.

Lastly on this point, if ALJ Brock erred in finding Plaintiff would have to miss work "at least" once every six weeks, this error was harmless. When questioning VE Hollander regarding employer tolerance for absenteeism, ALJ Brock first asked if the hypothetical individual's need to miss one day of work every six weeks would impact the individual's employability. (Tr. 60). VE Hollander testified that the individual would still be able to perform several jobs she had previously listed, including "small parts assembler" (approximately 200,000 jobs nationally), "electronics worker" (approximately 28,000 jobs nationally), or "inspector and hand packager" (approximately 321,000 jobs nationally). (Tr. 60, 59). ALJ Brock then asked if the individual's employability would be impacted if the individual needed to miss work slightly more frequently, once every four weeks. (Tr. 60). VE Hollander testified that all three jobs would still be available to the hypothetical individual. (*Id.*). ALJ Brock's finding that Plaintiff would need to miss "at least" one day every six weeks appears simply to account for the possibility that he may actually need to miss one day every four weeks, which, according to VE Hollander, would not affect the ultimate

9

disability determination. While ALJ Brock could certainly have been more specific, doing so would not have changed her finding that a significant number of jobs exist in the national economy that Plaintiff can perform, since even one monthly absence would be tolerated.

Consistent with VE Hollander's testimony, the plain language of Dr. Arshad's May 2019 statement, and Plaintiff's own hearing testimony, ALJ Brock crafted a thorough RFC that "accommodates [Plaintiff's] treatment by an anticipated day off work." (Tr. 21). The Court finds that ALJ Brock's RFC determination is supported by substantial evidence in the record and is not so vague to necessitate remand. The Court, therefore, does not recommend remand on this basis.

### B. Subjective Complaints

Plaintiff also argues ALJ Brock failed to adequately discuss his alleged symptoms and specifically failed to address whether, and how often, he would need restroom breaks during the work day. (DN 17, at PageID # 1682). He cites to the Appeals Council's instruction to address the frequency of his need for bathroom breaks and suggests ALJ Brock did not comply with the remand order. (*Id.*). The Commissioner suggests ALJ Brock recognized Plaintiff's alleged limitations and considered "diagnostic test results and response to treatment in finding he was not as limited as he claimed." (DN 22, at PageID # 1705).

When forming the RFC, an ALJ must assess the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 404.1520c, 404.1529(a). A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*,

801 F.2d at 854. In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

In assessing Plaintiff's need for restroom breaks, ALJ Brock considered two treating source statements noting Plaintiff "would need ready access to a bathroom as well as excessive 'off task' time and absences from work." (Tr. 22 (citing Tr. 1060–68)). ALJ Brock found these restrictions "too extreme given [Plaintiff's] positive response to treatment," followed up with an unambiguous acknowledgement of the Appeals Council's directive:

> Addressing the Appeals Council remand concerns, the claimant's testimony and reports in the record of only 3 to 4 bowel movements a day do not necessitate a ready bathroom access limitation and his testimony that he generally does well between his 6-week infusions does not support the need for excessive absences and breaks from work. The opinions find the claimant can occasionally lift up to 10 pounds but they provide little support for why he could only lift that amount. There are postural limitations in both opinions, which have been given some weight as his abdominal pain and obesity support the need for occasional postural activities. There are temporary "off-work" slips from 2017 at 2F, but they are given no weight as they are temporary in nature and provide no explanation for the restriction.

(Tr. 22).

ALJ Brock also addressed Plaintiff's gastrointestinal issues generally and found that "the longitudinal record supports that no additional limitations are needed." (Tr. 21). She noted that with medication, Plaintiff "reported less bloody stool, a better appetite, and decreased abdominal pain." (*Id.*). She also recognized that overall Plaintiff's symptoms were improving in early March 2017, but his lower abdominal pain and other "intermittent symptoms" persisted. (*Id.*). ALJ Brock cited to a May 2017 CT scan which showed "mild thickening of the colon," but noted that by July 2017 an increased dosage of Remicade was helping to improve Plaintiff's symptoms. (*Id.*). She noted that Plaintiff's symptoms continued to improve through October 2017 and resolved entirely

11

by January 2018. (*Id.*). ALJ Brock also provided that September 2018 records revealed "no symptoms of ulcerative colitis" and "no side effects from his medications." (*Id.*). Furthermore, she cited to "normal abdominal examinations" in December 2018, treatment records evidencing "ongoing improvements in symptoms with solid bowel movements three to four times a day" in 2019, and Plaintiff's own report of a "complete resolution of symptoms." (*Id.*). Despite these positive signs, ALJ Brock still acknowledged that Plaintiff requires Remicade treatment and "provided postural and environmental limitations to avoid exposure to triggers that may flare his pain." (*Id.*).

ALJ Brock's assessment of Plaintiff's subjective complaints demonstrates thorough consideration of Plaintiff's treatment history and the medical records documenting his symptoms. Her analysis comports with the regulations and complies with the directives of the Appeals Council's remand order. The Court does not recommend remand on this basis.

## RECOMMENDATION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED.**

Regina S. Edwards, Magistrate Judge
United States District Court

August 23, 2022

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:        Counsel of Record